## SLIGER v. SLIGER et al.—105 S. W. (2d) 117.

Middle Section. January 23, 1937.

Petition for Certiorari denied by Supreme Court, May 22, 1937.

Haile & Cox, of Cookeville, and W. B. Magness and J. F. Williamson, both of Louisville, Ky., for appellant Federal Land Bank of Louisville.

J. O. Paris, John Tucker, E. H. Boyd, and G. C. Boyd, all of Cookeville, for appellee Amanda Sliger.

CROWNOVER, J. The questions involved in this suit are whether or not the Federal Land Bank is entitled to assert an equitable lien upon the land of C. A. Allen for the residue of its indebtedness due from Sliger, under the terms of an agreement between Sliger and Allen by which Sliger lent Allen a part of the fund he had borrowed from the land bank. Allen executed a trust deed on his lands to secure Sliger. The proposition is whether said land bank is entitled to follow its loan to Sliger, which it is alleged was in effect a trust fund, into the hands of Allen.

The original bill in this cause was filed as a general creditors' bill by Amanda Sliger against Joe Sliger (her former husband), the Federal Land Bank of Louisville, and others.

The objects of the bill were: (1) To collect a judgment for $150 alimony rendered against Joe Sliger in a divorce proceeding; (2) to have the Federal Land Bank foreclose its deed of trust executed by Amanda Sliger and Joe Sliger on two tracts of land, the third tract included in said deed of trust having been decreed to Amanda Sliger in a divorce proceeding, the decree providing that Joe Sliger should disencumber said tract; (3) to have a deed of trust executed by Allen and wife to Sliger foreclosed.

The bill was sustained as a general creditor's bill and a receiver was appointed.

The Federal Land Bank of Louisville filed an intervening petition, making C. A. Allen, Sallie Allen, and C. M. Stone, trustee under a deed of trust executed by Allen and wife to Sliger and wife, parties, asking for the appointment of a receiver, for foreclosure of the Sliger deed of trust, and that it be declared to have an equitable lien on the lands of Allen and wife for the reason that Sliger illegally lent to Allen $800 of the amount he had borrowed from the land bank; and that in the event the proceeds of the sale of the Sliger lands were not sufficient to pay said indebtedness, the Allen deed of trust be foreclosed.

The chancellor found and decreed that Joe Sliger and Amanda Sliger had defaulted in the payments on said loan; that there was due said land bank the sum of $2,210.36; that the land bank was entitled to foreclose its deed in accordance with its terms and conditions.

The Sliger land was sold and after applying the proceeds of the sale upon the indebtedness there remained due $577.06.

The complainant demanded a jury to try the issues, which demand was granted, but by agreement of the parties the presence of an actual jury was waived, and the cause was tried by the chancellor sitting as a jury, and on the final hearing of the case the chancellor

held that the trust deed executed by Sliger and wife was the only instrument executed to secure the payment of said $2,000 loan from the land bank; that the land bank was not a party to the transaction between Sliger and Allen; and that the bank had no lien, equitable or otherwise, upon the Allen lands, and he dismissed said petition in so far as it sought to have the proceeds of the sale of the Allen lands applied to the payment of the amount due said bank from Sliger, but held that the bank had a right to share in said proceeds pro rata with other creditors of Sliger.

The Federal Land Bank's motion for a new trial was overruled and it appealed to this court and has assigned errors, which raise only the propositions that it was entitled to assert an equitable lien on the Allen lands, or to follow the proceeds of its loan, which was in effect a trust fund, into the hands of Allen.

The facts necessary to be stated are:

About July, 1927, C. A. Allen, of White county, attempted to secure a loan of $800 from the Federal Land Bank of Louisville. The loan was refused for the reason that his land was not so situated that it could be approved for a loan. Joe Sliger, of White county, wished to borrow $1,200 from the land bank.

Allen and Sliger entered into an agreement by which Sliger should borrow $2,000 and lend $800 of the same to Allen; that Allen should execute a deed of trust on his lands to secure same to Sliger; that Allen should repay Sliger by making payments on the dates on which Sliger should pay the land bank; and that Allen's payments to Sliger should be on the same basis as Sliger's payments to the bank, that is, that the amount of Allen's payments should be arrived at by finding the proportion of the payments (under the amortization plan) of Sliger that $800 bears to $2,000.

In Sliger's application for the loan was asked the following question:

"C. Purpose of Loan.

"To which of the following four purposes . . . do you intend and hereby state you will apply the proceeds of this loan?"

To which he answered:

| | |
|---|---:|
| "To building dwelling | $ 750.00 |
| To pay balance on land | 650.00 |
| To pay personal debts | 500.00 |
| To pay for stock in Natl. Farm Loan Asso. | 100.00 |
| Total amount | $2,000.00" |

The investigator for the loan committee reported that the total value of the land and buildings, etc., was about $8,650; and that the present sale price of the property was $6,000; and recommended a loan not to exceed $2,000.

The loan of $2,000 was made and the first mortgage note and deed of trust were executed by Joe Sliger .and Amanda Sliger on July 28, 1927.

Soon afterwards Sliger lent Allen $800. Allen and wife executed a deed of trust to Sliger and wife. That part of the deed in regard to payments of the amount is as follows:

"That is to say, we are justly indebted to Joe Sliger in the sum of $765.05, evidenced by a note of this date, due and payable in full ten years after date; it being agreed and understood by and between us and Joe Sliger that we are to pay to the said Joe Sliger semi-annually the amount or proportion of the payment due the Federal Land Bank of Louisville, Ky., on his loan of $2,000.00; that $800.00 bears to same; said semi-annual payments to be due and payable as said Sliger's interest payments are due, which is May 1st and Nov. 1st of each year, which payments are to be credited on said note, and we are to have credit and benefit of such credits as is allowed by the Federal Land Bank, during the period of this ten years, or until this note is paid in full. This note is given in renewal of the balance due on the $800.00 note secured by the above mentioned Trust Deed, which Trust Deed is to be released and said note cancelled at this time; and it appearing that said $800.00 note is now lost and cannot be found, the said Joe Sliger is at this time making an affidavit that he is now the owner thereof and that same is lost and cannot be found."

Mrs. Amanda Sliger obtained a divorce from Joe Sliger. In the proceeding, one of said tracts of land was decreed to her as a part of her alimony.

Amanda Sliger and Joe Sliger remarried and were again divorced. In this decree it was provided that Joe Sliger should disencumber said tract of land, which has never been done, and there was granted to her the further sum of $150, which has not been paid.

The deed of trust states:

"That the whole and every portion of said loan shall be expended only for the purpose specified in the original application, . . . except . . . that the party of the second part may permit said loan to be used for any other purpose authorized by the Federal Farm Loan Act, said permission to be given in writing only."

The deed of trust provides:

"This deed of trust and the note secured thereby are executed and delivered under and in accordance with said Federal Farm Loan Act and are subject to all the terms, conditions and provisions thereof, which act is made a part hereof the same as if set out in full herein."

The deed of trust further provides that if the "parties of the first part . . . shall be in default . . . in respect to the performance of any of the conditions, covenants or agreements in said

note or this deed of trust contained, the whole indebtedness shall become due and payable." ·

The Federal Farm Loan Act provides:

"*Fourth. Purposes of loans enumerated.*—Such loans may be made for the following purposes and for no other:

"(a) To provide for the purchase of land for agricultural uses.

"(b) To provide for the purchase of equipment, fertilizers, and livestock necessary for the proper and reasonable operation of the mortgaged farm; the term 'equipment' to be defined by the Farm Credit Administration.

"(c) To provide buildings and for the improvement of farm lands; the term 'improvement' to be defined by the Farm Credit Administration.

"(d) To liquidate indebtedness of the owner of the land mortgaged incurred for agricultural purposes, or incurred prior to January 1, 1933.

"(e) To provide the owner of the land mortgaged with funds for general agricultural uses. (July 17, 1916, chapter 245, section 12, 39 Stat. 370; April 20, 1920, chapter 154, section 4, 41 Stat. 570; March 4, 1923, chapter 252, section 306, 42 Stat. 1476; March 4, 1933, chapter 270, section 2, 47 Stat. 1547; March 27, 1933, Ex. Or. 6084.)" 12 U. S. C. A., section 771.

"*Tenth. Agreement by borrowers as to use of loans.*—Every borrower who shall be granted a loan under the provisions of this subchapter shall enter into an agreement, in form and under conditions to be prescribed by the Farm Credit Administration, that if the whole or any portion of his loan shall be expended for purposes other than those specified in his original application, or if the borrower shall be in default in respect to any condition or covenant of the mortgage, the whole of said loan shall, at the option of the mortgagee, become due and payable forthwith: Provided, That the borrower may use part of said loan to pay for his stock in the farm loan association, and the land bank holding such mortgage may permit said loan to be used for any purpose specified in subsection fourth of this section. (July 17, 1916, chapter 245, section 12, 39 Stat. 370; March 27, 1933, Ex. Or. 6084.)" 12 U. S. C. A., section 771.

"Any applicant for a loan under this subchapter, or officer or representative of any such applicant, who shall knowingly make any false statement in the application for such . . . shall be punished by a fine of not exceeding $5,000, or by imprisonment not exceeding one year, or both. . . . (July 17, 1916, chapter 245, section 31, 39 Stat. 382; June 3, 1935, chapter 164, section 21, 49 Stat. 319.)" 12 U. S. C. A., section 981.

1. Federal Land Bank of Louisville insists that the proceeds of the loan to Sliger constituted a trust fund to be used and expended

'in certain ways, as shown by his application, and that when any portion of the fund was diverted or otherwise expended, it would have a right to follow said fund.

It is insisted by complainants that the $2,000 lent by the Federal Land Bank to Joe Sliger and Amanda Sliger, secured by a deed of trust on lands, was a loan, and that the money was not in any sense a trust fund.

After a careful examination of the record and the facts in this case, we think the land bank has a right to have set up a constructive or resulting trust on the Allen mortgage and a lien on the Allen land mortgaged to Sliger for the land bank money lent to Allen in violation of the land bank mortgage and in violation of law.

The money was lent to Sliger on condition that he would "pay balance on land," "build dwelling," etc., and its diversion was illegal and a fraud on the land bank.

"Every express executory agreement in writing, indicating intention to make property described security for debt or promising to transfer property as security, creates equitable lien good against original contractor, his heirs, representatives, voluntary assigns, purchasers, or incumbrancers with notice." Hunt v. Curry, 153 Tenn. 11, 282 S. W. 201.

Where a party makes false representations for the purpose of borrowing money and invests it in other lands or mortgages on other lands, a constructive trust is created.

"Where a borrower represented that he wanted money for the purpose of improving his farm but used it to purchase another farm, held that a constructive trust was created and the lender might maintain an attachment against the land which was bought with his money." Walker v. Collins, 7 Tenn App. 333, 334.

"Where money has been loaned on mortgage, and the morgage was taken in the name of a third person, the mortgagee has been held to be a trustee by way of a resulting trust for the person lending the money. So also where a mortgage has been assigned to one person and the consideration for the assignment was paid by another, a trust therein has been held to result in favor of the person from whom the consideration for the assignment moved." 15 Am. & Eng. Ency. of Law (2 Ed.), 1140.

It can readily be seen that a borrower could perpetrate a great fraud on the lender by making false representations as to the use of the money loaned. For instance, suppose a borrower owned a lot worth only $1,000 and represented to a bank or trust company that he was going to erect an apartment house on it that would cost $50,-000, and by these representations a loan of $50,000 was effected and a mortgage was executed on the lot, but after he obtained the money he failed and refused to erect the apartment, and instead purchased

another apartment elsewhere with that money and took the title in his wife's name, the lender certainly could assert a constructive trust on the apartment purchased.

2. Mrs. Sliger signed the application and the deed of trust and she owes the debt to the land bank. She is bound to the bank, and is not in any event entitled to the proceeds of the Allen mortgage as against the land bank.

The land bank is entitled to a lien on the Allen mortgage, and has priority over Sliger's general creditors; hence the assignments of errors must be sustained and the decree reversed; and the cause is remanded to the chancery court of White county for a foreclosure of the Allen mortgage and a distribution of the proceeds in accordance with this opinion. The costs of the cause including the costs of the appeal are decreed against Mrs. Sliger.

Faw, P. J., and DeWitt, J., concur.